DEPARTMENT OF VETERANS AFFAIRS

OFFICE OF RESOLUTION MANAGEMENT

IN RE:

ALEXANDER E. WILLIAMS

    and            Case No.

VA OFFICE OF CONGRESSIONAL    2004-0009-

AND LEGISLATIVE AFFAIRS,      2003100376

WASHINGTON, D.C.

    Telephonic sworn statement of WILLIAM BUFFINGTON, called for examination by William Sanders, EEO Investigator, from the Office of Resolution Management, taken before me, Judy L. Wagner, a Court Reporter and Notary Public in and for the State of Ohio, at the VA Medical Center, 10000 Brecksville Road, Building One, Fourth Floor, Brecksville, Ohio, on Wednesday, August 6, 2003 at 8:00 a.m.

B-2

Page 2

MR. SANDERS: Today is Wednesday, August 6th, 2003. My name is William Sanders, EEO Investigator, from the Office of Resolution Management, Cleveland field office. I'm investigating the discrimination complaint of Alexander Williams, filed against the VA Office of Congressional and Legislative Affairs. This is the affidavit of Bill Buffington.

Do you prefer Bill or William?

MR. BUFFINGTON: Well, if it's legal, make it William, I suppose.

MR. SANDERS: Okay. Mr. Buffington, it is my duty to inform you that you are required to cooperate in this investigation and that your statement must be given under oath without a pledge of confidence, which means that it may be released to interested parties. However, you are protected by law from any restraint, interference, coercion, discrimination, or reprisal as a result of having presented factual testimony in connection with this matter.

Do you understand your rights and responsibilities?

Page 3

MR. BUFFINGTON: I do.

MR. SANDERS: Would you please raise your right hand?

WILLIAM BUFFINGTON, of lawful age, called for examination by the Department of Veterans Affairs, being by Williams Sanders, EEO Investigator, first duly sworn, as hereinafter certified, said as follows:

EXAMINATION OF WILLIAM BUFFINGTON
BY MR. SANDERS:

Q. Can you tell me what your race is?
A. White, Caucasian.
Q. And your date of birth?
A. February 6th, 1944.
Q. Would you like a copy of your affidavit?
A. Yes, please.
Q. What is your mailing address?
A. At work?
Q. Yes.
A. William Buffington, Office of Congressional and Legislative Affairs, Department of Veterans Affairs, 810 Vermont Avenue, Northwest. And I don't know the ZIP Code.

Page 4

Q. I can find that out.
A. Okay.
Q. Mr. Williams' complaint is that on the basis of his race, black, and age, 65, he was not selected for the position of Legislative Affairs Officer, GS-301, grade 13/14, announcement number OCLA-02-15, and he says he was notified of his nonselection on October 23rd, 2002.

Can you tell me what your involvement was in this job announcement?
A. Yes.

I was the selecting official. We had an individual who held that position previously who transferred to the Veterans Health Administration.

And after she left, we posted the job as a replacement at the grade 13/14 level. I was the selecting official, as I said, and I reviewed some packages that came from our Office of Human Resources. I do not remember if this individual's package was in there or not.

We made a selection. The individual who was selected was Danny Devine,

Page 5

who, at the time, was a Schedule C employee, working in this office doing similar work.
Q. Schedule C means he was a presidential appointee?
A. Yes.
Q. And what happened?
A. He was selected, and when the selection moved forward within the chain, the Secretary decided he did not want to promote a Schedule C individual into the career of civil service.
Q. You mean Secretary Principi?
A. Yes, Secretary Principi, or the Secretary's office. I'm not sure to what degree the Secretary himself got involved.

I just know that the decision was made by the Secretary's office not to promote a Schedule C into the career of civil service.
Q. Did Mr. Devine accept or decline the position?
A. You know, I honestly don't know. Actually, I assume he would have accepted it, but I don't know. I don't recall.
Q. The reason I ask is that in the counselor's report -- you remember talking to

Page 6

1   Anthony Metcalf, the ORM counselor in
2   Washington? That would have been a long time
3   ago, like October.
4           Anyway, he said that you said
5   Mr. Devine declined the position.
6       A.  No.
7       Q.  I just want to clarify that.
8       A.  I'm not sure -- I'm not aware --
9   you know, I'm not aware of the time frame of
10  things, in the terms of the paperwork and all
11  and how soon the Secretary's office decided
12  they didn't want to move forward with the
13  career position for a Schedule C.
14          I'm not sure whether the actual
15  offer was made to Mr. Devine to accept or
16  decline. I'm certain he would not have
17  declined.
18      Q.  Why wasn't someone else selected?
19      A.  At that time, there were budget
20  considerations and we decided not to move
21  forward with filling the slot.
22      Q.  Do you ever meet Mr. Williams?
23      A.  I did not.
24      Q.  Did you ever talk to him on the
25  phone?

Page 7

1       A.  I may have. An individual called
2   me, and I don't remember the name, and I got
3   two phone calls regarding the situation. And I
4   don't know if they were from the same person or
5   if it was from Mr. Williams.
6           But whoever called, it was somebody
7   who had applied and knew that I was the
8   selecting official. I was forthright with him,
9   told him that an individual had been selected,
10  and that the individual was a Schedule C and
11  the Secretary's office had concerns about
12  moving a Schedule C employee into the career of
13  civil service, and that no other action had
14  been taken.
15      Q.  Do you recall why you selected
16  Mr. Devine?
17      A.  Yes. He was currently assigned to
18  our office. He's well qualified. I knew him
19  when he was with the House Committee on
20  Veterans Affairs. He had a career in the
21  legislative branch, and, in fact, he
22  worked -- he had dealings with our office when
23  he was over there. And he had the best
24  qualifications in terms of congressional
25  experience of the applications that I looked at

Page 8

1       Q.  At the time that you selected
2   Mr. Devine and at the time that you decided not
3   to fill the position, did you know
4   Mr. Williams' race or age
5       A.  I did not. As I said, I'm not even
6   sure I saw his paperwork. I'm not sure if it
7   was forwarded to me. Once the decision was
8   made to select Mr. Devine, I gave back all the
9   paperwork to our human resources liaison, Susan
10  Thorough.
11      Q.  Was Trish Moore involved in the
12  selection process?
13      A.  She is our liaison person in the
14  Office of Human Resources, Central Office of
15  Human Resources. And I'm not sure what you
16  mean by involved in the selection.
17          She did not, you know, have any say
18  in the selection. Although, obviously, being
19  our liaison in the Office of Human Resources,
20  she would have been the one who prepared the
21  applications to send forward. And at some
22  point in time, somebody looks at these and
23  makes a determination as to whether or not they
24  meet the qualifications for the grade based on
25  their experience and background.

Page 9

1       Q.  What I basically want to know is,
2   did she have any input in the selection
3   process?
4       A.  No.
5       Q.  Did she make any recommendations or
6   did you consult with her?
7       A.  No.
8       Q.  She had nothing to do with it?
9       A.  No.
10      Q.  It was your decision? There was no
11  panel, it was totally your decision?
12      A.  Totally my decision and the
13  Assistant Secretary's. We discussed it.
14      Q.  One more thing I want to bring your
15  attention to. It's not terribly important, but
16  I sent an E-mail to Ms. Moore asking her for
17  some EEO data, the race of the various
18  applicants.
19          She E-mailed me back. It says,
20  "Normally, this type of information is
21  requested by an official letter from ORM to the
22  responsible official or to HR. I need an
23  official request in order to give you this
24  information or any additional info."
25          I don't know how other offices do

Page 10

1  it, but, to my knowledge, there is no
2  particular format that we are required to file
3  in requesting information. I have been asking
4  for information by E-mail or even telephone for
5  years and I've never had a problem with it.
6       So I will comply with her request
7  and I will send her a letter on letterhead
8  paper. I don't have a problem with that, but I
9  just wanted to bring it to your attention,
10 because she says, "Normally, this type of
11 information." I don't know where she got that
12 information.
13     A.  I'm not familiar with that process
14 at all.
15     Q.  Okay.
16     A.  And, in fact, I'm not even aware
17 that there's any place on the application to
18 identify race.
19     Q.  Oh, I'm sure there's not, no.
20     A.  No.
21     Q.  But I have to ask. If they don't
22 know, they don't know.
23     A.  Hmm-hmm.
24     Q.  So I either want them to tell me
25 what the people's races are or tell me they

Page 11

1  don't know. So that's all that matters.
2       A.  Yes.
3       Q.  All right. I have no further
4  questions.
5       Is there anything else you'd like
6  to add about this matter?
7       A.  No, other than the fact that, like
8  I say, the decision was made internally based
9  on the applications that were forwarded to me.
10      As I said, I returned the
11 applications and all the materials to our HR
12 liaison who probably turned them back to human
13 resources.
14      I don't remember there being a lot
15 of applications, and I honestly don't remember
16 if I saw Mr. Williams', if it was forwarded.
17     Q.  All right. Mr. Buffington, thank
18 for your time.
19     A.  And one other thing, as I
20 mentioned, I talked to somebody on the phone
21 twice. I'm not sure if it was the same person.
22 I'm not sure if it was Mr. Williams.
23     MR. SANDERS: All right. I'll get
24 your affidavit out to you as soon as possible.
25     MR. BUFFINGTON: All right. Thank

Page 12

1  you.
2       MR. SANDERS: Bye.
3       - - - - -
4       (Statement concluded at 8:11 a.m.)
5       - - - - -

Page 13

CERTIFICATE

In re:   Alexander E. Williams vs.
         VA Office of Congressional
         and Legislative Affairs
Statement of:   WILLIAM BUFFINGTON

     I, Judy L. Wagner, do hereby
certify that as such Reporter I took down in
Stenotypy all of the proceedings had in the
foregoing transcript; that I have transcribed
my said Stenotype notes into typewritten form
as appears in the foregoing transcript; that
said transcript is the complete form of the
proceedings had in said cause and constitutes a
true and correct transcript therein.


          Judy L. Wagner, Notary Public
          within and for the State of Ohio

My commission expires October 10, 2005.

```
 1                      CERTIFICATE
 2
 3   In re:    Alexander E. Williams vs.
 4             VA Office of Congressional
 5             and Legislative Affairs
 6   Statement of:   WILLIAM BUFFINGTON
 7
 8         I, Judy L. Wagner, do hereby
 9   certify that as such Reporter I took down in
10   Stenotypy all of the proceedings had in the
11   foregoing transcript; that I have transcribed
12   my said Stenotype notes into typewritten form
13   as appears in the foregoing transcript; that
14   said transcript is the complete form of the
15   proceedings had in said cause and constitutes a
16   true and correct transcript therein.
17
18
19
20         _____
21         Judy L. Wagner, Notary Public
22         within and for the State of Ohio
23
24   My commission expires October 10, 2005.
25
```